In the Matter of the ESTATE OF George S. ELIAS, Deceased.

Genevieve G. ELIAS, Claimant, Appellant,

v.

FIRSTAR BANK OF COUNCIL BLUFFS, By Gary R. FAUST, Vice President & Trust Officer, Personal Representative, Appellee.

No. 92–1363.

Supreme Court of Iowa.

July 21, 1993.

Deborah L. Petersen of Perkins, Sacks, Hannan, Reilly & Petersen, Council Bluffs, for appellant.

Lyle A. Rodenburg, Council Bluffs, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

LARSON, Justice.

A beneficiary of a residuary trust under the will of George Elias appeals from an order overruling her objections to the executor's final report. She claims the executor breached its fiduciary duties in administering the estate by failing to fund the trust for her benefit prior to the closing of the estate. We affirm.

George Elias died on March 12, 1990, in Las Vegas, Nevada, where he had been a temporary resident. He was survived by his wife, Genevieve. An estate was opened in Pottawattamie County on March 20, 1990, and the Firstar Bank of Council Bluffs was appointed as executor. Under Elias's will, specific bequests were made to relatives and other beneficiaries. Genevieve received the family home and its contents.

The will provided that, after payment of the expenses and specific bequests, the residue would be placed in trust for the bene-

fit of Genevieve, who was to receive a minimum of $2000 per month, and for Elias's brother, John, who was to receive $100 per month. On the death of either Genevieve or John, the trust was to terminate and the remaining balance in the trust paid to the survivor.

The gross estate was valued at over $592,000. After the funeral expenses, death taxes, and payment of the specific bequests, the first payments were made to the residuary trust in May of 1991.

The bank filed its final report and accounting on May 20, 1992, and requested that it be authorized to transfer all remaining assets in the estate to the trust. On June 10, 1992, the executor (which was also the trustee) petitioned the court for authority to open the trust. This authority was granted in an order of the same date.

On June 19, 1992, Genevieve filed an objection to the final report on the ground that the executor should have funded the trust immediately after the claims period expired on July 30, 1990, "reserving an adequate amount for payment of bequests, inheritance tax, costs, and fees...." Genevieve demanded that the $2000 per month provided for by the will be paid to her, retroactive to the date of George's death.

The district court ruled that the executor did not abuse its discretion in refusing to make the distribution to the trust retroactive to George's death. On appeal, Genevieve claims error because, when there is no provision to the contrary in the will, the right to income begins on the date of the testator's death, and

> [p]rudent administration would have determined that it was safe to distribute the entire estate either at the termination of the four (4) months notice to creditors, on July 30, 1990; or after the nine (9) months requirement to distribute the specific bequests and pay the inheritance tax in December, 1990.

She also claims that an earlier distribution might have resulted in a more favorable income tax rate.

The terms of the trust are established by section VIII of the will:

> All the rest, residue and remainder of my estate I hereby place in Trust with the Council Bluffs Savings Bank [now Firstar Bank], Council Bluffs, Iowa, as Trustee, and from said funds my Trustee shall make the following distributions:
>
> 1. $2000.00 a month to my wife, Genevieve Elias.
>
> 2. $100.00 a month to my brother, John S. Elias.
>
> I further provide that monthly payments are to terminate upon the death of each beneficiary under the terms of this Trust.
>
> I further provide that in the event the sum of $2,000.00 a month is not sufficient to provide for the needs of my wife, Genevieve Evans [sic], that my Trustee shall be empowered to increase said monthly payments to my wife to an amount that would adequately provide for her financial needs but further provide that before said increase can be granted, an application and approval of the Court should be obtained for said increased benefits.
>
> I further provide that upon the death of either of said income beneficiaries under the terms of this Trust, that this Trust shall terminate and all remaining principal and accrued interest shall be paid to the survivor.
>
> ....
>
> I further direct that my Executor, hereinafter named, shall first pay my specific bequests as set out in this Will, and that all the remainder of my estate, either from the proceeds of real estate, bank or savings accounts, or proceeds of any real estate contracts, be placed in the Trust created by this Will for the purposes enumerated in said Will.

Gary Faust, an employee of the executor bank, testified that it was consistent with the bank's practices in such cases to delay payment of the residue until the closing of the estate.

One author has noted that

> Iowa law, like the laws of most states, does not require that a personal representative distribute any of the estate's

property until the estate has been fully administered. The lack of an earlier distribution requirement is essentially for the protection of the personal representative as it protects him against claims which may be asserted against him at a time when he no longer has property in his hands from which to satisfy claims. An exception to the "no distribution requirements" rule is carved out for surviving spouses and dependent children who may apply to the court for an order, directed to the personal representative, compelling a distribution of estate property to them for their support [§ 633.-355]. A further exception is provided in Iowa Code section 633.355, which requires the personal representative to deliver specifically devised or bequeathed property to the distributee within nine months of appointment unless otherwise ordered by the court.

Sheldon F. Kurtz, *Kurtz on Iowa Estates*, § 15.21, at 535 (2d ed. 1989).

■ Under the general rule, an executor's decision as to the timing of the distribution is affected by consideration of several factors, including the duty to pay all claims and expenses of administration. 31 Am.Jur.2d *Executors and Administrators* § 1013, at 492 (1989). In that connection, the bank officer in charge of this estate testified that he was reluctant to make a preliminary distribution to the trust because of legal difficulties encountered in obtaining some of George's assets located in Nevada and the threat of possible litigation by John Elias concerning the validity of the will.

In this connection,

if ... assets are merely claimed to exist and the right to them is involved in litigation, either by an action brought by the executor or administrator to recover them for the estate, or by an action against the executor or administrator to recover them from the estate, no partial distribution may be made, the estate not being ready for distribution, since the very existence of the property as assets

is uncertain and contingent upon the determination of the suits.

*Id.* § 1086, at 523.

Under all of the circumstances of this case, we conclude that the executor acted well within the parameters of its permissible judgment in refusing to fund the trust prior to the closing of the estate.

Genevieve argues that the prospect of legal entanglements is only illusory because any such claims would be time barred. We do not believe, however, that an executor is required to rely on the application of time bars at its peril; it is possible that considerable assets could be exhausted just in the process of litigating the time-bar issues.

■ Even if it was proper for the executor to defer funding of the trust until the estate was closed, however, Genevieve complains that the trust payments to her should be made retroactive to the date of George's death. This was fourteen months before her first monthly payment, and she therefore claimed a total of $28,000.

Genevieve's objection to the executor's final report raises this issue of retroactive payment, although technically this is a trust matter, not an estate matter. The executor's duty was to pay the residue to the trust, not directly to the trust beneficiaries. It is therefore questionable whether the issue of the trustee's failure to make retroactive payments to the beneficiaries is even properly raised in an objection to the final report in the estate.

In any event, we find no breach of duty in refusing to make the trust distributions retroactively to George's death. The will is silent as to the starting date for the monthly distributions, but it clearly contemplates that the trust would not come into existence until after the payment of expenses and bequests to named beneficiaries. There is no mention that, once the trust is in existence, the trustee must make payments retroactive to the date of death, nor do we find such direction to be implied in the wording of the will.

We find that neither the executor nor the trustee violated its fiduciary duties in the

funding of the trust or in refusing to make trust payments retroactive to the date of death. Accordingly, we affirm.

**AFFIRMED.**